**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CATHERINE SHOEMATE,**

        **Plaintiff,**

**v.**                                                                      **Case No.  8:07-cv-152-T-TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Supplemental

Security Income Payments.  For the reasons set out herein, the decision is affirmed.

**I.**

Plaintiff was forty five years of age at the time of her most recent administrative

hearings in December 2005 and June 2006.  Plaintiff has a high school education and

obtained her GED.  Her past relevant work was as a house cleaner, salad bar helper, fast food

worker, and cable assembler.  Plaintiff applied for Supplemental Security Income ("SSI")

payments on May 4, 1999 (protective filing date), alleging disability as of October 8, 1998, by

reason of generalized pain and numbness; pain and swelling in her joints, hands, feet, ankles,

wrist, back, neck, legs, heals, and under the left arm; tiredness; and difficulty balancing.[1]  The

Plaintiff's application was denied originally and on reconsideration.  The Plaintiff, at her

request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ") on

December 19, 2000.[2]  (R. 567-591).  By a decision of March 30, 2001, the ALJ denied

Plaintiff's claim.[3]  (R. 368-74).  Plaintiff sought review of the ALJ's decision.  On October

27, 2003, the Appeals Council denied review after considering additional evidence.  (R. 401-

04).  Thereafter, Plaintiff appealed to the district court.  By order dated March 11, 2005, the

---

[1]Plaintiff later amended her onset date to May 4, 1999, the protective filing date of her application.  (R. 78).

[2]The Plaintiff was not represented by counsel at this hearing but testified in her own behalf.  (R. 567-85, 589-90).  She testified that she last worked in October 1999.  She was cleaning houses and had to stop because she was sick.  According to Plaintiff, she had rheumatoid arthritis and hepatitis C.  She was having difficulty getting proper treatment with doctors; she believed they were giving her the runaround.  She complained of pain in her neck and lower back, and stated that it radiates down her legs and arms.  She indicated that she has "bad" chronic fatigue.  She took pain medication, namely, Darvocet and Fioricet, which makes her sleepy.  Plaintiff also complained of difficulty concentrating and getting along with people.  Plaintiff testified she also suffered from fibromyalgia, colitis, and COPD, and she had cervical cancer and a lump removed from her breast.  Plaintiff indicated that it often was easier for her to stand than to sit.  Plaintiff told the ALJ that she did not appear for certain examinations because she did not have transportation; when the SSA called a cab for her, she went.  She stated that she no longer goes to the hospital because all they do is call her primary doctor and prescribe medication; they do not fix what is wrong.  A vocational expert also testified.  On the assumption of an individual of Plaintiff's background and work history, capable of performing light to sedentary work with a sit/stand option and occasional limitations for bending, stooping and crouching, the expert opined that there were jobs available in the national economy that the individual could perform.  (R. 567-89).

[3]Plaintiff filed another application for SSI on May 15, 2001.  It was denied initially and on reconsideration.  A hearing before a different ALJ was conducted on June 3, 2003.  Plaintiff was represented by counsel and testified on her own behalf.  By order dated July 23, 2003, the ALJ concluded that Plaintiff was disabled as of March 31, 2001, the day after the other ALJ's decision.  The ALJ did not reopen Plaintiff's prior application because he concluded that the decision of March 31, 2001, was res judicata.  (R. 378-81).

district court granted the Commissioner's unopposed motion for entry of judgment with remand.  (R. 411-12).  On remand, the Appeals Council vacated the ALJ's decision and remanded Plaintiff's case for further consideration.[4]  (R. 415-16).  Two supplemental hearings were conducted on remand.

The first supplemental hearing was held on December 16, 2005.  The Plaintiff was represented by counsel and testified in her own behalf.  At the outset, the ALJ noted that Plaintiff was bundled up and had on a coat and cap.  Plaintiff indicated that she was "cold, cold, cold, cold," as she had recently had a liver biopsy done and had "pain in the marrow of my bones."[5]  Plaintiff testified that she remembers being sick during the period in question, from October 1998 through April 2001.  By her account, she was ill for quite some time before she even sought SSI benefits.  Plaintiff attempted to keep working because she had to take care of her daughter since her daughter's "father was crack drunk."  She was fired from her last job and had some difficulty with coworkers.  She applied for benefits because she could not keep a job.  She also sought assistance with housing.  As a result, Plaintiff was referred to Florida's Welfare to Work ("WAGES") program and underwent a vocational evaluation at Good Will Industries.  After testing, Plaintiff said she was told she could work "approximately 20 hours a week or something."

---

[4]The Appeals Council directed the ALJ to (1) consider evidence included in the record of the subsequent claim to the extent that it was material, (2) consider the vocational report dated December 18, 2000, that was not addressed in the March 30, 2001, decision, (3) afford Plaintiff the opportunity to present any new evidence material to her claim, and (4) obtain vocational expert testimony and reexamine the medical and other evidence.  (R. 415-16).

[5]Plaintiff's testimony is rambling, somewhat confusing, and difficult to follow.  She did not always respond appropriately to the questions posed to her.

3

Plaintiff testified that during the period in question, she had problems with bending over, memory, focusing, and standing, and she would get "completely sick." She indicated that she knew something was wrong but that it was not within her control to fix it. Plaintiff testified that when she first sought medical attention, the doctors "played games" and told her she was fine. This went on for about a year. Plaintiff stated she was accepted into a treatment program for her rheumatoid arthritis but her liver problems prevented her from doing the program. Plaintiff was diagnosed with hepatitis C in 1998. She testified that she had arguments with doctors and was frustrated; she had difficulty communicating and getting along with her doctors. In addition to her physical problems, Plaintiff testified that she also had some problems with depression and anxiety at the time but did not realize it. She indicated that those problems were worse then because she did not take anxiety medication. When questioned about a gap in medical records from October 1999 through January 2001, Plaintiff denied that there was a period of time when she did not seek medical attention. *See* Plaintiff's testimony (R. 52-73).

Due to this gap in the record, the ALJ requested that Plaintiff's counsel attempt to supplement the record with such prior to obtaining vocational expert testimony. Counsel submitted additional records to the ALJ in February 2006. (R. 598-99).

The second supplemental hearing was conducted on June 19, 2006. At this time, counsel amended Plaintiff's alleged onset to May 4, 1999. (R. 78). Plaintiff provided somewhat limited and rambling testimony in hopes of explaining the lack of medical records during the sixteen-month period from October 1999 through January 2001. She indicated that she sought treatment in 2000 because she was in "too much pain." She saw a rheumatologist

4

and her primary doctor for pain.  She also had a complete hysterectomy.  Plaintiff indicated

further that she was in an automobile accident in 2000.  *See* Plaintiff's testimony (R. 83-87).

Steven Simon, Ph.D., a vocational expert ("VE"), testified upon an assumption of an

individual of Plaintiff's age and education, capable of light to sedentary work with a sit/stand

option; an occasional limitation for bending, stooping, crouching, and kneeling; an occasional

limitation for concentrating on assigned tasks; and capable of performing repetitive tasks

when occasional changes in position are tolerated.  On this hypothetical, the VE opined

Plaintiff could not perform her past relevant work but could perform work existing in

substantial numbers in the national economy such as assembler, office helper, hand packer,

and packing line worker.  Upon questioning from Plaintiff's counsel, the VE testified that no

jobs would be available if the individual could sit or stand less than a half an hour at a time

without having to change position and had no ability for repetitive hand movements.  Upon

further questioning, the VE opined that no jobs would be available if the individual was only

able to work four hours a day, two days a week.  *See* VE's testimony (R. 93-96).

Also before the ALJ were medical records outlining the Plaintiff's medical history.

These matters are addressed herein as necessary.  Pertinent to the ALJ's decision was the

closed period of disability being sought - May 4, 1999, through April 30, 2001.

By his decision of September 29, 2006, the ALJ determined that during the period in

issue, Plaintiff had severe impairments related to early rheumatoid arthritis, hepatitis C,

fibrositis,[6] mild degenerative disc disease, and dysthymic disorder, but none of the

---

[6]Fibromyalgia was formerly known as fibrosis.  *See* Roscoe N. Gray, M.D., & Louise
J. Gordy, M.D., L.L.B., Att'ys Txtbk. Med., ch. 25.02 (3d ed. 1998);

impairments, singly or in combination, met or medically equaled one of the impairments listed in Appendix 1 to Subpart P of Social Security Administration Regulation No. 4.[7]  The ALJ then found that Plaintiff had the residual functional capacity to perform routine, repetitive light and sedentary work with a sit/stand option as tolerated and occasional limitations for bending, stooping, crawling, kneeling, and concentrating on assigned tasks. Upon this finding and the testimony of the VE, the ALJ concluded that while Plaintiff could not perform her past relevant work but could perform other jobs existing in significant numbers in the national and local economy.  (R. 15-26).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from

---

http://www.rxmed.com/b.main/b1.1.illnesses/FIBROSITIS.html (last visited March 30, 2008);" http://www.medicinenet.com/fibromyalgia/article.htm (last visited March 30, 2008); http://www.medical-library.org/journals2a/Fibromialgia.htm (last visited March 30, 2008).

[7]The ALJ also determined that Plaintiff suffered from the non-severe impairments of a mild lacunar infarct and communicating hydrocephalus that were essentially asymptomatic, mild obstructive pulmonary disease, and episodic symptoms from colitis and cervical carcinoma in situs, removed without complication.  (R. 15).

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises five claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred by failing to properly consider the December 2001 report of a certified vocational expert;

(2) The ALJ erred when he disregarded the medical diagnosis and symptoms of Plaintiff's rheumatoid arthritis, fibromyalgia, symptoms of hepatitis C, hydrocephalus of the brain and instead substituted his own medical opinion;

(3) The ALJ failed to properly consider Claimant's subjective complaints including pain;

(4) The ALJ failed to properly consider the opinions of Claimant's treating physicians; and

(5) The ALJ failed to properly develop the record by failing to pose a hypothetical question to the vocational expert which comprehensively described her impairments.

As an initial matter, I note that I am not unsympathetic to Plaintiff's condition. However, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's

8

decision.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).  Here, subsequent to the remand, the ALJ conducted a thorough and fair review of the medical record and concluded that it did not support the claim that Plaintiff was disabled from all work during the limited period at issue.  For the reasons set forth below, the decision of the Commissioner is affirmed.

By her first claim, Plaintiff argues that the ALJ's reasons for rejecting the report of Jill Flansburg, M.A., a certified vocational expert, are not supported by the record and thus the ALJ erred in rejecting the opinion without adequate reasons.  By Plaintiff's reading of the decision, the ALJ erroneously rejected this opinion because Ms. Flansburg did not review the medical evidence and the questioning was subjective.  According to Plaintiff, there is no record evidence that contradicts Ms. Flansburg's report.  Rather, it is supported by the evaluator's testing and behavioral observations of Plaintiff, as well as the totality of the medical record.  Additionally, Plaintiff notes that at her first hearing in December 2000, the ALJ advised her that the vocational report, when received, would be a "big factor" in her case.[8]  Plaintiff concedes that this opinion was not binding on the ALJ, but urges that case law provides that the ALJ should have accorded it great weight as the opinion of another agency.[9] (Doc. 25 at 13-17).

---

[8]Although the vocational testing/assessment was completed and sent to the ALJ prior to the first decision in March 2001, the report somehow did not make it to the ALJ.  When the Appeals Council remanded Plaintiff's case, it directed the ALJ to consider this report.

[9]In support thereof, Plaintiff cites *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984), and *Bloodsworth*, 703 F.2d at 1241.

In response, the Commissioner notes that Plaintiff failed to identify all of the reasons the ALJ rejected Ms. Flansburg's report.  He points out that the ALJ discussed in length why he did not credit the opinion, including the fact that the evaluation did not include motor coordination or finger/manual dexterity testing.  The Commissioner further notes that the medical evidence (or lack thereof) supports the ALJ's determination.  (Doc. 28 at 3-14).

As indicated, the Plaintiff underwent testing and career planning/assessment by a certified vocational expert employed by Goodwill Industries-Suncoast, Inc., in December 2000.  In short, the expert opined that Plaintiff may be a good candidate for part-time (4 hours a day, 2 days a week) community service activities to expose her to support positions in the business detail field but she did not think Plaintiff was capable of full-time employment at that time.  (R. 175).  The ALJ rejected this report, explaining that:

> The report of "vocational testing" dated December 18, 2000, is based on interview, that is, the assertions and subjective complaints of the claimant, and some testing.  There is no mention of any of the medical reports discussed above, nor does it appear that any medical evidence was considered.  I note, for example, that the claimant's report included a stroke in her alleged impairments although she did not have a stroke.  The claimant completed an interest inventory and temperament survey, which, as noted in the report, "are only as valid as an individual's responses."  I find the interest survey to be of little to no value in my evaluation of the claimant's functional capacity because of the lack of relevance.  The temperament survey appears to be consistent with some of the claimant's allegations, but not necessarily the findings or opinions of the consulting psychologist noted above.  The claimant also completed aptitude testing under which the claimant failed to qualify for even one of the 66 occupational aptitude patterns tested, relating to groups of occupations.  And the testing did not even include motor coordination, finger dexterity or manual dexterity scores because of the symptoms alleged by the claimant, so the total

lack of aptitude for any occupation was not even based on problems in these areas of function. What the lack of aptitude was based on is not specified or in fact described in any way. Nor is it clear how much the claimant's subjective input affected the testing. With the lack of evaluation of medical evidence, the subjective nature of some of the testing and the above questions, I find the results and the opinions based thereon entitled to little weight in my decision. I note that true to form, the claimant's behavior was difficult, the testing had to be scheduled three times and the claimant still had to leave early. Her depression and anger were noted, and appropriate counseling recommended. . . . I find no basis for such a limited effort other than the subjective complaints of the claimant which I do not find totally credible.

(R. 20).

Upon careful consideration, I find that substantial evidence supports the ALJ's decision to accord this opinion little weight. As indicated by the ALJ, one of the reasons he chose to reject Ms. Flansburg's opinion was that she did not have Plaintiff perform or attempt to perform any type of physical testing, particularly that required for gainful employment, including the use of the hands and/or fingers. That reason alone would appear to call into question the significance of the assessment. Given that the vocational expert did not review Plaintiff's medical records or perform any type of testing that measures an individual's ability to perform physical work-related activities, and given the fact that many of the conclusions appear based on Plaintiff's subjective complaints, it was reasonable for the ALJ to reach the conclusion that he did. While Plaintiff is correct that the findings of disability of another agency are generally entitled to great weight, *see Bloodsworth*, 703 F.2d at 1241, there is no indication here that the WAGES program (the agency referring Plaintiff for evaluation) or Goodwill Industries-Suncoast, Inc., (the agency performing the assessment) utilized a

definition of disability that is similar to that used in federal social security law.  *Cf. Falcon*, 732 F.2d at 831 (holding ALJ erred in not giving great weight to finding of disability by state worker's compensation agency where state and federal definition of disability were construed in a like manner).  Additionally, I find it immaterial to Plaintiff's instant argument that the ALJ previously commented that this report would be a "big factor" in his decision.  Finally, while Plaintiff urges that the vocational expert's opinion was consistent with the disability reports completed by treating physicians, for the reasons discussed below, the ALJ adequately discounted those opinions as well and, consequently, they do not lend support to Ms. Flansburg's opinion that Plaintiff is unable to work beyond part-time community service work.

Plaintiff's next two claims are related and involve the ALJ's assessment of her subjective allegations.  By her second claim, Plaintiff argues that the ALJ erred by dismissing the alleged degree and symptoms of her pain by concluding that her allegations of pain were not in proportion to the objective medical record.  Thus, Plaintiff suggests that her chronic pain due to rheumatoid arthritis, fibromyalgia, hydrocephalus, hepatitis C and degenerative disc disease was proportionate to the medical record and the ALJ improperly substituted his opinion for that of her doctors in reaching a contrary result.  As one example, Plaintiff points to her testimony that she could not use her hands repeatedly, which was substantiated by nodules found on two of her fingers, the diagnosis of rheumatoid arthritis, and the opinion of an ODD consulting examiner, Dr. Robin M. Hughes, who concluded that Plaintiff could never perform repetitive movement of her hands.  By her third claim, Plaintiff argues the ALJ's reasons for discounting her subjective complaints are not supported by the record.  In

particular, Plaintiff asserts that the ALJ erred by disregarding her pain complaints related to fibromyalgia and rheumatoid arthritis on the basis of a lack of objective evidence and/or physical findings.  Plaintiff also faults the ALJ for discounting her subjective allegations on the basis that she was uncooperative with her doctors, failed to appear for consultative examinations, and had little treatment during the period in question.  Furthermore, Plaintiff suggests that the ALJ failed to adequately consider her allegations of pain, fatigue and inability to concentrate due to pain, as well the side effects of her medication.  Plaintiff concludes that her testimony and allegations should be taken as true since no examining doctor questioned or contradicted her allegations.  (Doc. 25 at 17-22).

In response, the Commissioner first asserts that the ALJ's determination that Plaintiff did not have hand restrictions is supported by the record.  Thus, contrary to Plaintiff's assertion, the ALJ did not rely on Dr. Hughes' assessment about Plaintiff's manipulative limitations and the non-examining doctors' reports support the ALJ's finding that Plaintiff did not have restrictions using her hands.  The Commissioner also asserts that Plaintiff's reliance on a "guarded" psychological prognosis is misplaced because a prognosis is not an assessment of work-related ability.  The Commissioner further asserts that the ALJ correctly reasoned that Plaintiff's symptoms were out of proportion to the reported medical findings.  (Doc. 28 at 14-18).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  By this standard, there must be

evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt*, 921 F.2d at 1223 (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Dyer*, 395 F.3d at 1210; *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012.

Upon careful consideration, I am obliged to conclude that the ALJ did not err in this regard. I initially find that the decision reflects the ALJ applied the proper standard in assessing Plaintiff's subjective complaints. The ALJ expressly referred to this circuit's "pain standard," and to the applicable regulatory provision and ruling. (R. 16, 21). And, a fair reading of the decision reflects his application of the standard. Thus, the ALJ found that Plaintiff was not symptom free and that she had medically determinable severe impairments, namely, early rheumatoid arthritis, hepatitis C, fibrositis, mild degenerative disc disease, and

14

dysthymic disorder, that could reasonably give rise to the type of pain and limitations alleged, just not to the extent that the limitations resulting therefrom were disabling.

The ALJ also provided reasons for discounting Plaintiff's allegations of disabling pain, fatigue, and resulting limitations. First, he noted that Plaintiff's demonstrated attitude and lack of cooperation undercut her credibility. In support thereof, the ALJ referenced Plaintiff's poor cooperation with the SSA in obtaining and developing medical records, her disputes with medical sources, her failure to appear for several scheduled consultative examinations, her insistence that she was pregnant in 1997 despite a normal physical examination and leaving the hospital against advise and refusing testing, and her refusal to take prescription medication and accept a referral for a mental health evaluation in 1998. (R. 16). Second, the ALJ reasoned that, "[c]learly, the objective evidence during the period in issue did not establish the degree of pain or other symptoms alleged by the claimant." (R. 22). The ALJ noted that while Plaintiff has alleged constant and rather extreme pain, her complaints were disproportionate to the findings on physical examination and testing. Third, the ALJ determined that Plaintiff was less than credible in light of the issue of secondary gain, i.e., that Plaintiff was responsible for the care of a two to four year old child. (R. 22). Fourth, the ALJ noted that Plaintiff did not comply with recommended or prescribed treatment both with respect to medical examinations and medication. (R. 22).

Upon careful consideration of the record, I find that the ALJ stated sufficient reasons for discounting Plaintiff's allegations of disabling pain.[10] While I agree with the Plaintiff that

---

[10]At the outset, I note that the vague, non-specific subjective allegations on the part of Plaintiff undercut her arguments on this issue. Other than claiming an inability to work due to pain, fatigue, and the inability to focus and/or remember, Plaintiff's testimony speaks little by way of how much she was actually capable of doing.

some of the reasons offered are not entirely persuasive,[11] I am unable to agree with Plaintiff

that the ALJ has not stated adequate bases for discounting her testimony and concluding that,

on the whole, her testimony was less than fully credible for the period in dispute.  For

example, apart from her fibromyalgia (fibrositis as found by the ALJ), I do not agree with

Plaintiff that the ALJ could not consider the lack of objective evidence as one significant

factor in assessing her credibility.  While Plaintiff undoubtedly suffered from early

rheumatoid arthritis and hepatitis C (and the remainder of her impairments aside from

fibrositis), it was reasonable for the ALJ to consider the lack of objective evidence confirming

---

[11]Of note, I am not entirely persuaded that Plaintiff's attitude and lack of cooperation entirely undermines her credibility.  The record contain numerous instances in which doctors noted vague concerns about Plaintiff's mental state.  *See*, e.g., (R. 218, 220-21, 270, 272, 283-84).  It may well be that Plaintiff's lack of cooperation was at least in part a product of her mental difficulties.  The ALJ's determination regarding her attitude is in of itself a subjective judgment and interestingly, the ALJ that awarded Plaintiff benefits found her allegations credible.  (R. 380).  As for not attending consultative examinations, Plaintiff explained that she did cooperate by attending examinations when she had transportation.  She also explained that her difficulty with doctors resulted from their giving her the runaround about her conditions.  This in fact may be how Plaintiff perceived her medical care and thus not necessarily reflective of her credibility.  If exhibiting frustration with the medical profession was cause to challenge one's credibility, many of us would be found to be not entirely credible.  As for the medical record being disproportionate to Plaintiff's complaints, it arguably is not a supportable reason with regards to fibromyalgia.  *See Stewart v. Apfel,* 245 F.3d 793, 2000 U.S. App. Lexis 33214, *7-10 (11th Cir. Dec. 20, 2000) (noting that fibromyalgia often lacks medical or laboratory signs; indeed, its hallmark is a lack of objective evidence); *Green-Younger v. Barnhart*, 335 F.3d 99, 107-09 (2nd Cir. 2003) (providing that a doctor's opinion regarding functional limitations is not undermined by reliance on the plaintiff's subjective complaints when the plaintiff suffers from fibromyalgia, and noting that, "in stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions").  However, this issue is not developed on appeal, and the ALJ did note that trigger or tender points were not even documented until 2001.  As for secondary gain, it is not without merit; however, all SSI claimants could be discredited on this ground.

the severity of Plaintiff's symptoms related to such.[12]  During the relevant period, treatment

for Plaintiff's conditions was primarily limited to medication and treating doctors notably did

not identify with specificity restrictions resulting from such.  Furthermore, although Plaintiff

explained she had other problems during this time and counsel explained certain records were

not available, the ALJ cannot be faulted for finding that Plaintiff obtained little treatment

during this period for her alleged disabling conditions.  As for her hydrocephalus, a MRI of

the brain in December 1998 failed to reveal the evidence of such (R. 210), and Plaintiff did

not complain of any symptoms attributed to such or challenge the ALJ's finding that it was a

non-severe impairment.  Although Plaintiff is correct that her allegations concerning the

intensity and persistence of pain or other symptoms may not be disregarded *solely* because

they are not substantiated by objective medical evidence, *see*  S.S.R. 96-7p, 1996 WL 374186,

*6 (S.S.A.), it is nonetheless appropriate for an adjudicator to consider the absence of such as

one factor in assessing an individual's credibility.  *See id.*  While I do not agree totally with

the ALJ that the issue of secondary gain (i.e., Plaintiff's need for funds to support her child to

avoid losing her) offers a sound basis to discredit her, there is record support for Plaintiff's

concern about this in the written and oral testimony.  The ALJ also correctly noted that

Plaintiff did not always follow prescribed treatment and recommended psychological and/or

psychiatric referrals.  While it may be common for those with mental illness to refuse

treatment or acknowledge a problem, the consulting psychologist found little by way of

---

[12] It is worth noting, Plaintiff did not develop this argument or cite to authority
supporting her urging that the lack of objective evidence is immaterial with rheumatoid
arthritis, hepatitis C, or other of her impairments (apart from fibromyalgia, which she does not
develop either.)  My research reveals authority to support this claim with regards to a lack of
objective support for fibromyalgia, but I can find no authority to support the argument with
regards to rheumatoid arthritis or the other impairments.

mental impairment to suggest this was an issue with Plaintiff during the period at issue.  To

the extent Plaintiff challenges the alleged limitations regarding her hands and offers Dr.

Hughes' opinion in support (indicating no repetitive hand movement), the ALJ did not credit

all of Dr. Hughes' report and did not credit that particular limitation.  *See* (R. 18).  A review

of the record as a whole supports the ALJ's conclusion on this limitation.  Plaintiff did not

testify that she could not use her hands repeatedly during the period in question.  Rather, she

testified that, "but, see, like now I can't use my hands."  (R. 63).  In any event there was

objective record support suggesting that the condition in her hands was at an early stage and

another examiner suggested no findings to support a crippling limitation with the use of her

hands as late as November 2001.  (R. 736-38).  Likewise, to the extent Plaintiff challenges the

ALJ's mental limitations on the basis of a "guarded" prognosis, I agree with the

Commissioner that such is not an assessment of work-related ability or inability.  In addition,

while I do not dispute that the ALJ may have engaged in improperly substituting his opinion

for that of a doctor, I do not find that the supported portions of his findings are rendered

invalid as a result.  Finally, to the extent Plaintiff suggests that the ALJ did not adequately

consider her allegations in general, I disagree.  As for the side effects of medication, although

Plaintiff testified the medication made her sleepy, she was not more specific.  My review of

the medical record failed to review documentation of similar complaints.  As such, I am

unable to conclude that the ALJ erred in this regard.  *See Swindle v. Sullivan*, 914 F.2d 222,

226 (11th Cir.1990) (holding an ALJ's determination on side effects was supported by

substantial evidence where the claimant did not complain about side effects and the record did

not disclose any concerns about side effects by the doctors examining claimant).  In any

18

event, Plaintiff fails to demonstrate that the limitations found by the ALJ do not subsume this alleged symptom.

By her fourth claim, Plaintiff argues that the ALJ erred by failing to accord proper weight to the opinions of her treating physicians, Dr. Senra and Dr. Barbour, and relying instead on the residual functional assessment opinion of a non-examining, state agency doctor.  According to Plaintiff, the records of her treating physicians support their opinions that she is disabled and the reasons given by the ALJ for rejecting their opinions are not supported by substantial evidence.  (Doc. 25 at 22-23).

The Commissioner maintains that the ALJ adequately discounted the disability opinions of these doctors on grounds that they were conclusory and concerned an issue reserved to the Commissioner, i.e., disability.  Additionally, the Commissioner notes that the ALJ also appeared to have rejected Dr. Barbour's opinion that Plaintiff was limited to an eight-hour workweek on the basis that the opinion mimicked a report from a non-medical source.  (Doc. 28 at 9-10, 12).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  *Phillips*, 357 F.3d at 1240; *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor*, 786 F.2d at 1053; *see also* 20 C.F.R. § 416.927(d)(2).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053.  Good cause for rejecting a treating source's opinion may be

found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *MacGregor*, 786 F.2d at 1053.

Plaintiff is not entitled to relief on this claim. The ALJ was not required to accord controlling weight to the disability opinions of Drs. Senra and Barbour.[13] As the ALJ and the Commissioner aptly noted, a treating doctor's opinion that a claimant is unable to work is not a "medical opinion" as defined by the regulations, but an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e). Such opinions are never entitled to controlling weight or special significance. *See* S.S.R. 96-5p, 1996 WL 374183, *1, 2 (S.S.A.). In any event, the ALJ also noted that the disability opinions were conclusory and lacked supporting statements about physical and mental limitations. (R. 19). In the case of Dr. Barbour, the ALJ specifically noted a lack of abnormal findings on monthly physical examinations. *Id.* Given that these doctors' records reveal few physical findings that would support an inability to work, *see e.g.*, (R. 632-39, 817, 819), I am obliged to conclude that the ALJ's stated reasons for rejecting the conclusory opinions are supported by substantial evidence. As for the ALJ's rejection of Dr. Barbour's opinion that Plaintiff was limited to light activity, namely, four hours a day, two days a week (R. 644, 646, 838), this does appear to be the

---

[13]As noted by Plaintiff, Drs. Senra and Barbour completed medical verification forms for the WAGES program. The doctors indicated that Plaintiff's condition was permanent and prevented employment. *See* (R. 645, 818). As noted above, there is no indication of how the program defined or evaluated the matter of disability.

opinion of the vocational expert (discussed above) rather than that of the doctor and I find that the ALJ stated adequate cause to reject the opinion on the basis of the doctor's own records. In sum, the opinions were conclusory and on a matter left to the Commissioner.  Regardless, the ALJ fairly examined the records and stated good cause to reject the vocational conclusions of these two doctors.

By her last claim, Plaintiff argues that the ALJ posed an incomplete hypothetical question to the VE and erroneously relied upon his answer to the same.  By this argument, the hypothetical was incomplete because it did not take into consideration Plaintiff's "chronic pain; her inability to concentrate or stay on task due to severe fatigue and chronic pain; the well-documented symptoms of dysthymic disorder, depression and anxiety; . . . diffuse joint pain, particularly in her hands; and fatigue due to rheumatoid arthritis and chronic pain, fibromyalgia, cervical and lumbar disc disease; and symptoms of hepatitis C and hydrocephalus."  Plaintiff also faults the ALJ for failing to include the hand limitation identified by Dr. Hughes (no repetitive hand movement) in the hypothetical.  (Doc. 25 at 23-24).

The Commissioner counters that the regulations do not require that all of the assessments of record or all of the actual *impairments* need to be included in the hypothetical question(s).  Thus, he urges that the ALJ's hypothetical was proper.  (Doc. 28 at 18-19).

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the

expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

For the same reasons found above, I likewise conclude that the ALJ fairly and adequately included in the hypothetical questions the functional limitations suffered by the Plaintiff throughout the period at issue. Thus, the ALJ did fairly address limitations from Plaintiffs generalized allegations about her chronic pain, fatigue and ability to concentrate for the period in question, crediting her with occasional lapses (up to one-third of the day) in her ability to concentrate on assigned tasks and capable of only routine, repetitive predictable tasks. Aside from the hand limitation which I have concluded the ALJ properly discounted for the period at issue, Plaintiff does not identify any specific functional restrictions the ALJ should have included in the hypothetical question but did not.[14] While an ALJ is obliged to fully incorporate all limitations in his hypothetical questions, the applicable law does not require an ALJ to include findings/limitations in his hypothetical question that he has properly rejected as unsupported. *See Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1160-61 (11th Cir. 2004); *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001).


IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is

---

[14]As the transcript reveals, counsel was afforded a full opportunity to question the VE and did so. If the hypothetical questions were lacking, counsel shares in the blame and should not be heard to complain about it for the first time on appeal. In any event, counsel did question the VE specifically about Plaintiff's alleged inability to do repetitive hand movements and surely could have inquired about other alleged limitations if necessary.

otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the

Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 31st day of March 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

23